Case No.

---

## IN THE
## SUPREME COURT OF THE UNITED STATES

---

RAYON PAYNE,
*Petitioner,*

v.

## UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT,

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, and

## UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA,
*Respondents.*

ON PETITION FOR A WRIT OF MANDAMUS
TO THE U.S. CIRCUIT AND DISTRICT COURT
FOR COLUMBIA, AND DISTRICT M.D.FL

---

## PETITION FOR A WRIT OF MANDAMUS

---

RAYON PAYNE, PRO SE
8815 Conroy Windermere Rd.
Ste. #208
Orlando Florida 32835
Tel: 863-485-0550
Email: info@folksalert.com

**RECEIVED**
DEC 08 2025
Clerk, U.S. District & Bankruptcy
Court for the District of Columbia

i

# QUESTIONS PRESENTED

1. Whether this Court should exercise its supervisory authority under 28 U.S.C. §1651(a) to resolve a structural conflict created when two federal courts—the D.C. District Court and the Middle District of Florida—asserted jurisdiction over the same 8 U.S.C. §1447(b) matter simultaneously, resulting in irreconcilable orders and a breakdown in the lawful allocation of federal judicial power.

2. Whether the continued suppression of Petitioner's federal immigration A-File by DOJ, USCIS, and DHS—despite its central role in multiple proceedings across multiple courts—constitutes a structural due-process violation that no single lower court has the authority to remedy, thereby requiring this Court's intervention to preserve the integrity of the federal judicial process.

3. Whether the paralysis in the D.C. Circuit, caused by DOJ's procedural default, unresolved conflicts of interest, and the inter-court jurisdictional collision involving Petitioner's case, presents an exceptional circumstance warranting the issuance of a supervisory writ to restore judicial functionality and ensure access to appellate review.

*ii*

# PARTIES TO THE PROCEEDING

## Petitioner:

Rayon Payne is a pro se litigant and the Petitioner in this matter, sought relief in the D.C. District Court and D.C. Circuit. Petitioner has also raised constitutional claims under 42 U.S.C. § 1985(3), and filed parallel supervisory writs now pending docketing before this Court.

## Respondents:

## Judicial Proceedings and Forums:

United States Court of Appeals for the D.C. Circuit — currently presiding over Petitioner's direct appeal (Rule 60(b)) and a pending petition for writ of mandamus.

United States District Court for the District of Columbia — where the underlying § 1447(b), FOIA, and § 1985(3) cases originated or are pending.

United States District Court for the Middle District of Florida — which acted on the transferred § 1447(b) case despite lacking jurisdiction under the statute.

*ii*

**Agencies and Departments:**

United States Department of Justice (DOJ) — whose attorneys entered appearances despite procedural conflict, instigated and defended structural transfers.

United States Citizenship and Immigration Services (USCIS) — for initiating constitutional injury through reliance on a non-existent conviction.

Department of Homeland Security (DHS) — the parent agency of USCIS and a named party in the FOIA litigation.

**Parties of Interest:**

Judge Ana C. Reyes — U.S. District Judge who transferred the § 1447(b) case in violation of statute and currently presides over the FOIA.

Judge Reggie B. Walton — U.S. District Judge now presiding over the § 1985(3).

Judge Carlos E. Mendoza — U.S. District Judge in the Middle District of Florida who dismissed the § 1447(b) case despite jurisdictional defects.

Derrick Petit and James Walker — DOJ attorneys of record in the appellate proceedings, with Petit also named as a defendant in the § 1985(3) action.

*iii*

# RELATED PROCEEDINGS

This Petition arises out of proceedings connected to multiple related matters across the U.S. District and Circuit Court for the District of Columbia, and the U.S. District Court for the Middle District of Florida. The following cases are directly related:

**Payne v. USCIS**, No. 1:25-cv-01952-ACR (D.D.C.) A civil action seeking adjudication of a long-pending naturalization application.

**Payne v. DHS**, No. 1:25-cv-03186-ACR (D.D.C.) FOIA action was filed by Petitioner seeking access to his complete immigration "A-file,".

**In re: Rayon Payne**, No. 25-5349 (D.C. Cir.) A pending mandamus petition involving judicial disqualification

**Payne v. USCIS**, No. 25-5355 (D.C. Cir.) The direct appeal from the D.C. District Court's order denying Rule 60(b) relief.

**Payne v. USCIS**, No. 6:25-cv-01855-CEM (M.D. Fla.) The transfer court, which issued standing orders and dismissed the case despite lacking jurisdiction under 28 U.S.C. § 1447(b).

**Payne v. Reyes, et al.**, No. 1:25-cv-03358-RBW (D.D.C.) A pending §1985(3), currently stalled due to unresolved service and protective motions.

*iv*

# TABLE OF CONTENTS

QUESTIONS PRESENTED ............................    i

PARTIES TO THE PROCEEDINGS ..............    ii

RELATED PROCEEDINGS ...........................    iii

TABLE OF CONTENTS ................................    iv

TABLE OF AUTHORITIES ...........................    v

PETITION FOR WRIT OF MANDAMUS .......    1

OPINIONS BELOW .....................................    2

JURISDICTION ...........................................    3

CONSTITUTIONAL AND LEGAL
PROVISIONS INVOLVED ............................    4

STATEMENT OF THE CASE .......................    5

REASONS FOR GRANTING THE PETITION.    8

REQUEST FOR PROTECTIVE RELIEF.........    19

CONCLUSION AND PRAYER FOR RELIEF...    21

## APPENDIX

TABLE OF APPENDICES .............................    A2

*v*

## TABLE OF AUTHORITIES

**CASE LAW**                                             **PAGES**

*United States v. Hovsepian,*
    359 F.3d 1144 (9th Cir. 2004) (en banc)......... 8

*Etape v. Chertoff,*
    497 F.3d 379 (4th Cir. 2007).......................... 8

*SEC v. McNulty,*
    137 F.3d 732 (2d Cir. 1998) ...................... 9

*Gill v. United States,*
    471 F.3d 204 (1st Cir. 2006)....................….… 9

*Liteky v. United States,*
    510 U.S. 540 (1994)...................................... 10

*Caperton v. A.T. Massey Coal Co.,*
    556 U.S. 868 (2009) ...............................10, 16

*Aetna Life Insurance Co. v. Lavoie,*
    475 U.S. 813 (1986)...................................... 11

*Tumey v. Ohio,*
    73 U.S. 510 (1927)......................................11, 13

*INS v. Chadha,*
    462 U.S. 919 (1983)...................................... 13

*Glus v. Brooklyn Eastern District Terminal,*
    359 U.S. 231 (1959) ............................... 14

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) ...............................15, 19

v

*Bounds v. Smith,*
  430 U.S. 817 (1977) ................................ 17, 18

*In re Sealed Case,*
  151 F.3d 1059, 1063 (D.C. Cir. 1998)......... 18

*Chambers v. NASCO, Inc.,*
  501 U.S. 32 (1991) ................................ 20

## RULES

Fed. R. Civ. P. 55(a) ................................. Passim

Rule 60(b) ..............................................6, 9, 10

Supreme Court Rule 27............................. 10

## STATUTE AND CONSTITUTION

8 U.S.C. § 1447(b)........................................ Passim

28 U.S.C. § 1651(a).................................... Passim

42 U.S. Code § 1985................................ Passim

28 U.S.C. § 455(a) ................................ 4, 10, 22

28 U.S.C. § 1291 ......................................
18

5 U.S.C. § 552 ...................................... Passim

8 C.F.R. § 336.2(b) ................................... 5, 12

U.S. Const. amend. V................................. 4

U.S. Const. amend. XIV, § 1 ......................... 4

*1*

## PETITION FOR WRIT OF MANDAMUS

Petitioner respectfully invokes this Court's authority under 28 U.S.C. § 1651(a) to issue a supervisory writ addressing a structural breakdown that no lower court is empowered to resolve.

The matters presented in this petition involve cross-jurisdictional conflicts between multiple federal courts, the unlawful exercise of jurisdiction by a district court while appellate jurisdiction was vested elsewhere, and the continued suppression of a federal immigration A-File by multiple federal agencies whose conduct cannot be supervised or remedied by the Court of Appeals.

This petition does not seek to compel the D.C. Circuit to act on matters within its ordinary jurisdiction. Rather, Petitioner seeks this Court's intervention because the D.C. Circuit is institutionally incapable of resolving the structural irregularities now embedded in the record:

(1) simultaneous and conflicting jurisdictional assertions by the D.C. District Court and the Middle District of Florida over the same 1447(b) matter;

(2) the continued suppression of Petitioner's federal A-File by DOJ and DHS components, which affects multiple cases in multiple courts; and

(3) the resulting paralysis within the D.C. Circuit, where adjudication has stalled due to procedural defaults and unresolved conflicts of interest that lower courts cannot cure.

**2**

Only this Court has the supervisory authority to unify these fragmented proceedings, restore proper jurisdictional boundaries, and ensure that federal agency misconduct does not nullify constitutional access to the courts.

## OPINIONS BELOW

There is no opinion below. The matters giving rise to this petition do not stem from a final judgment or reasoned decision of any lower court.

Instead, the record reflects a series of unresolved structural conflicts involving multiple federal courts and federal agencies, including conflicting jurisdictional actions by the D.C. District Court and the Middle District of Florida, the suppression of Petitioner's federal A-File by DOJ and DHS components, and resulting procedural paralysis in the D.C. Circuit.

Because these issues have not produced an appealable opinion and cannot be remedied through ordinary appellate review, Petitioner invokes this Court's supervisory authority under 28 U.S.C. § 1651(a).

**3**

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1651(a) to issue extraordinary writs in aid of its supervisory authority over the lower federal courts.

This petition does not arise from a final judgment of any court, but from a structural breakdown involving conflicting jurisdictional assertions by multiple federal courts and the suppression of a federal A-File by federal agencies whose conduct cannot be remedied within the ordinary appellate process.

Because no adequate remedy exists in any court below, and because the structural conflicts presented here exceed the institutional capacity of the courts of appeals to resolve, this Court's exercise of its supervisory jurisdiction is invoked pursuant to Rule 20 and the All Writs Act.

*4*

## CONSTITUTIONAL AND LEGAL PROVISIONS INVOLVED

U.S. Const. amend. V – Guaranteeing due process of law.

U.S. Const. amend. XIV, § 1 – Providing equal protection under the law.

28 U.S.C. § 1447(b) – Governing judicial review of naturalization delays.

28 U.S.C. § 455(a) – Requiring disqualification of any judge whose impartiality might reasonably be questioned.

28 U.S.C. § 1651(a) – The All Writs Act, authorizing the Supreme Court to issue all writs necessary to aid its jurisdiction.

42 U.S.C. § 1985(3) – Addressing conspiracies to deprive individuals of equal protection and other civil rights.

5 U.S.C. § 552 – The Freedom of Information Act (FOIA), ensuring access to federal agency records.

5

## STATEMENT OF THE CASE

This case presents a breakdown of judicial process spanning multiple federal courts. It began when Petitioner, a pro se litigant, sought access to his immigration "A-file" from United States Citizenship and Immigration Services (USCIS)—a file the Department of Justice (DOJ) has relied on to justify adverse action while refusing to provide Petitioner access. DOJ requested a 30-day extension in the district court to review the file.

In response, Petitioner filed a motion to compel access, which was denied. The district court ruled it would proceed under the Federal Rules of Civil Procedure only after DOJ had reviewed the file and filed its response. Instead, DOJ moved to transfer the case to the Middle District of Florida.

Petitioner objected to the transfer. Nonetheless, the district court granted DOJ's request via minute order, transferring the case under 8 U.S.C. § 1447(b)—a statute that prohibits such transfers. The case was docketed in the Middle District of Florida, which immediately issued standing orders and later dismissed the case without jurisdiction. Due to the improper use of minute orders to effect the transfer, Petitioner was denied a meaningful opportunity for timely appeal. Consequently, he filed a supervisory writ with the U.S. Supreme Court.

Simultaneously, Petitioner submitted a FOIA request for the A-file. USCIS confirmed receipt but later claimed no responsive documents could be found. Petitioner initiated a FOIA lawsuit, which

**6**

was assigned to Judge Ana C. Reyes—the same judge who presided over the original § 1447(b) case and authorized the transfer.

Petitioner moved to disqualify Judge Reyes due to her prior involvement; the motion was denied. He then moved to disqualify DOJ and filed a protective order—both motions were denied, with Judge Reyes continuing to preside.

To reverse the unlawful transfer, Petitioner filed a Rule 60(b) motion, which Judge Reyes resolved via minute order—reopening the case long enough to deny the Rule 60(b) relief and reclose it. This created an appealable final judgment, prompting Petitioner's direct appeal to the D.C. Circuit.

Meanwhile, Petitioner filed a 42 U.S.C. § 1985(3) civil-rights complaint naming DOJ officials and Judge Reyes. This action was originally assigned to Judge Reyes but reassigned by the calendar committee to Judge Reggie Walton.

Despite the gravity of the claims and structural conflicts, Judge Walton has yet to rule on motions for U.S. Marshal service or for protective order, leaving the case in procedural limbo.

Finally, to address Judge Reyes's continued jurisdiction over the FOIA case—despite her involvement in the § 1447(b) transfer and her role in related matters—Petitioner filed a writ of mandamus in the D.C. Circuit. That petition remains pending without any ruling, even as DOJ and Judge Reyes continue to act in the FOIA case.

7

This petition is grounded in the stark incongruity that the D.C. Circuit has two critical matters before it, yet remains entirely inert.

On one hand, the Circuit holds a petition for a writ of mandamus to disqualify Judge Ana C. Reyes from the FOIA case—a judge who transferred the § 1447(b) matter in violation of statute and is now blocking Petitioner's access to his A-file. On the other hand, the Circuit also holds the direct appeal from the Rule 60(b) denial in the § 1447(b) case itself, a case it should oversee precisely because Judge Reyes improperly transferred it to the Middle District of Florida.

Meanwhile, while the D.C. Circuit stood silent, the Middle District of Florida—despite having no jurisdiction under § 1447(b)—issued standing orders, accepted the case, dismissed it, and did so while the appeal was alive in this Court.

In addition, the D.C. District Court's inability to provide corrective relief is further demonstrated by the dismissal of Petitioner's civil-rights action under 42 U.S.C. § 1985(3) before Judge Reggie B. Walton, now included at (App I). Judge Walton accepted the allegations as true for purposes of dismissal, including allegations of agency misconduct, suppression of the A-File, and improper judicial involvement, yet dismissed the action on jurisdictional grounds without addressing the underlying structural conflicts. Petitioner filed a motion for reconsideration (App J), This sequence underscores the cross-jurisdictional injury affecting multiple federal courts and agencies.

8

## REASONS FOR GRANTING THE PETITION

This petition warrants review and extraordinary relief under the Court's supervisory authority because it presents structural failures of the federal judicial system, serious violations of statutory and constitutional mandates, and ongoing prejudice to the Petitioner that cannot be remedied in the ordinary course of appeal.

### A. Judicial Evasion of Statutory Constraints on Venue Undermines § 1447(b) and Demands Supervisory Correction

Congress enacted 8 U.S.C. § 1447(b) to create a narrow, exclusive jurisdictional mechanism to review delayed naturalization applications. It expressly vests jurisdiction in the district court "where the application is filed," and courts have uniformly held that such jurisdiction is exclusive and non-transferable. See United States v. Hovsepian, 359 F.3d 1144, 1159–63 (9th Cir. 2004) (en banc); Etape v. Chertoff, 497 F.3d 379, 385–86 (4th Cir. 2007). DOJ had no legal basis to request a transfer, and the district court had no authority to grant one.

Yet, in defiance of this statutory clarity, the DOJ unilaterally requested a transfer for convenience—an option explicitly foreclosed under § 1447(b)—and the district court acquiesced via minute order, depriving Appellant of any meaningful opportunity for appellate review.

After the transfer, the receiving court — the Middle District of Florida — proceeded to act: it issued

*9*

standing orders, assumed jurisdiction, and ultimately dismissed the case, despite lacking statutory authority under 8 U.S.C. § 1447(b). At the same time, the United States District Court for the District of Columbia reopened the matter on Appellant's Rule 60(b) motion, ruled on it, and then closed it again — via minute order.

Because a Rule 60(b) decision constitutes a final order and triggered appellate jurisdiction in the D.C. Circuit, see <u>SEC v. McNulty</u>, 137 F.3d 732 (2d Cir. 1998), and <u>Gill v. United States</u>, 471 F.3d 204 (1st Cir. 2006). Meanwhile, the Florida court continued issuing orders and completed disposition — creating parallel proceedings.

Notably, the same Middle District of Florida now stands under a writ of supervisory review at the Supreme Court for defiance of a higher-court tolling order from the Eleventh Circuit, underscoring the structural malfunction. This dual-forum enactment while the appeal was pending undermines § 1447(b)'s exclusive-jurisdiction scheme and the separation of powers. The D.C. Circuit, with full knowledge via a direct appeal and accompanying protective motions, has remained silent, allowing the jurisdictional conflict to fester.

This case presents more than a routine question of venue—it reflects a deeper institutional breakdown. Actions taken outside the bounds of statutory authority, including by the transferee court, have proceeded without corrective oversight, despite pending appellate proceedings and clear jurisdictional constraints. The result is a structural

*10*

irregularity that raises serious concerns about statutory fidelity and the proper limits of judicial power. This Court's review is warranted to clarify the boundaries of lawful judicial action and reinforce the principles underpinning Article III adjudication.

## B. Judicial Disqualification, Dual Forum Entanglement, and the Duty of the Appellate Court

Under 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Due Process Clause also guarantees the right to a "neutral and detached judge." See Liteky v. United States, 510 U.S. 540, 554 (1994). In Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), the Court held that due process requires recusal when "extreme facts" create a "probability of bias."

Here the circumstances raise far more than standard recusal concerns. The district judge presided over the transfer of the § 1447(b) case to a forum lacking jurisdiction and then assumed control of related FOIA and civil-rights proceedings involving the same A-file—the very records whose concealment sparked the litigation. This dual role of restructuring the case and then adjudicating related matters gives rise to a structural conflict, not just individual appearance questions.

Critically, the appellate court—the United States Court of Appeals for the D.C. Circuit—holds both a direct appeal (triggered by Rule 60(b)) of the

11

§ 1447(b) matter and a pending petition for a writ of mandamus to remove the conflicted judge from the FOIA case. The appellate court's refusal to act in the face of this dual forum entanglement enables the participation of counsel who themselves are defendants in a § 1985(3) matter and allows the judge to continue overseeing a case she helped transfer. This triad—judge, government counsel, and parallel proceedings—undermines the institutional integrity of the federal courts.

In Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813 (1986), the Court held that the Due Process Clause requires recusal when a judge has a "direct, personal, substantial, and pecuniary interest" in the outcome of the case. While that case involved pecuniary interest, its logic applies here: when a judge participates in the design of a litigation path (here the transfer) and then adjudicates related claims, the risk of bias is constitutionally intolerable. See also Tumey v. Ohio, 273 U.S. 510 (1927) (holding that a judge cannot preside over a case when his compensation is contingent on the outcome).

Because the D.C. Circuit has jurisdiction over the appeal and the mandamus petition and has failed to step in, the structural conflict remains unchecked. The Court's supervisory review under 28 U.S.C. § 1651(a) is therefore necessary to preserve the right to a fair tribunal, to reaffirm the separation of powers, and to ensure that no party—government or litigant—is subject to adjudication by a judge whose impartiality can reasonably be questioned.

12

## C. Structural Entanglement Between the Executive and Judiciary Undermining Due Process and Congressional Mandates

This case highlights an alarming convergence of executive misconduct and judicial acquiescence, which together have subverted the separation of powers and eroded constitutionally protected rights. At its core, the misconduct began with USCIS—a federal agency within the Department of Homeland Security—relying on a criminal conviction that had long been vacated to deny a naturalization application. Despite receiving certified proof of the vacatur, USCIS proceeded to collect an appeal fee and then closed the matter without issuing the written decision mandated by 8 C.F.R. § 336.2(b). This not only denied due process but also retained public funds under false pretenses.

Rather than correcting this constitutional and statutory violation, the Department of Justice—tasked with ensuring fidelity to the law—entered the litigation to defend these unlawful actions. Its role evolved from litigation representative to procedural architect, requesting an unauthorized transfer of venue that directly conflicted with 8 U.S.C. § 1447(b), which vests exclusive jurisdiction in the district where the case is filed. DOJ attorneys acted to shield the agency's original misconduct, rather than to remedy it.

The judiciary, rather than acting as a neutral arbiter, enabled this erosion of the statutory framework. A judge in the D.C. District Court permitted the transfer of a case she was statutorily

*13*

barred from transferring and then took jurisdiction over a separate FOIA matter tied to the same record—thus assuming responsibility for both the concealment and procedural outcome. Meanwhile, DOJ continued to litigate aggressively in the transferee court, which itself began issuing standing orders despite its lack of jurisdiction.

This entanglement between the DOJ and Article III courts, in a context where the judiciary should act as an institutional check, threatens the integrity of the judicial process. The Supreme Court has made clear that courts must guard against even the appearance of judicial bias or improper influence. As stated in Tumey v. Ohio, 273 U.S. 510 (1927), "Every procedure which would offer a possible temptation to the average man as a judge... not to hold the balance nice, clear and true... denies the [litigant] due process of law."

Furthermore, the structure of federal power does not permit interbranch alliances that circumvent express statutory mandates. As reaffirmed in Immigration and Naturalization Service v. Chadha, 462 U.S. 919, 953–54 (1983), "The Constitution sought to divide the delegated powers of the new Federal Government into three defined categories... to assure, as nearly as possible, that each branch of government would confine itself to its assigned responsibility." Here, both the executive and judicial branches have operated outside those assignments.

This Court's intervention is not only warranted but essential to restoring the constitutional boundaries and legislative supremacy that have been

14

transgressed in this case. Without it, the statutory scheme enacted by Congress under § 1447(b) and the guarantees of procedural fairness under the Fifth Amendment risk becoming empty formalities.

Rather than taking corrective action, the Department of Justice—through attorneys named in related civil rights litigation—entered the D.C. Circuit proceedings after missing the response deadline for pending procedural motions, including disqualification and protective orders. Despite being on formal notice of structural conflict, the same DOJ attorney who instigated the misconduct contacted Petitioner in an attempt to engineer a procedural concession. This action, taken while DOJ continues to withhold critical evidence (the A-file), illustrates a disturbing breakdown in procedural safeguards. DOJ cannot constitutionally benefit from a structural error it helped create. As this Court held in Glus v. Brooklyn Eastern District Terminal 359 U.S. 231 (1959), "no man may take advantage of his own wrong." The constitutional imperative is even greater when the government is the violator. Without immediate intervention, the current posture invites the erosion of public confidence in the impartiality of the judiciary and in the fairness of appellate review.

## D. Structural Prejudice, Withholding of A-File, and Constitutional Due Process Breakdown

Petitioner faces an ongoing deprivation of due process that now transcends ordinary procedural irregularities and implicates core constitutional protections. This prejudice originated at the

15

administrative level with USCIS and has metastasized through multiple judicial forums—now rooted firmly in the record before the D.C. Circuit.

At the center of this structural harm is Petitioner's continued denial of access to his own A-file—an essential government record central to every phase of this litigation. The government, through USCIS and DOJ, continues to withhold this file while simultaneously litigating against Petitioner based on its contents. The denial of access to this file is not only obstructive but constitutionally intolerable. As this Court reaffirmed in Goldberg v. Kelly, 397 U.S. 254 (1970), due process "is not a technical conception with a fixed content unrelated to time, place and circumstances," but a fundamental guarantee of fairness. Fairness cannot exist where one party controls the record and uses it while depriving the other of access.

Petitioner has pursued every available remedy: direct appeal, emergency mandamus, judicial complaints, motions to disqualify, motions for protective orders, and notices to preserve the record. Yet every forum—administrative, district, and circuit—has failed to act meaningfully. Inaction on the disqualification motion and protective filings has allowed structurally conflicted parties to participate unchecked, while the judiciary—entrusted as a constitutional safeguard—remains inert.

The D.C. District Court has failed to rule on service and venue motions critical to a § 1985(3) civil rights action. The D.C. Circuit has likewise failed to address a Rule 60(b) appeal or act on a pending

16

mandamus petition seeking the removal of a judge with longstanding structural entanglements. Simultaneously, the Middle District of Florida—despite having been served with structural notice and supervisory filings now pending before this Court—has proceeded to issue rulings without pause or acknowledgment of the jurisdictional conflict. This is not an oversight; it is institutional defiance. That court previously disregarded an Eleventh Circuit tolling order and continues to act despite clear jurisdictional limitations under 8 U.S.C. § 1447(b). Petitioner deliberately sought relief in the D.C. forum to escape that structural conflict, only to encounter the same systemic disregard. Compounding the prejudice, DOJ failed to timely oppose critical motions—yet continues to litigate while still withholding the Petitioner's A-file and making constitutionally improper contact. These coordinated failures reflect more than neglect; they reveal a pattern of institutional resistance to meaningful review.

The judiciary's silence amid such overt violations signals systemic institutional alignment rather than neutral adjudication. As <u>Caperton v. A.T. Massey Coal Co.</u>, 556 U.S. 868 (2009) teaches, due process is offended not only by actual bias, but also by circumstances where there is a serious risk of bias or unfairness. This case presents both.

The recent dismissal of Petitioner's § 1985(3) action by Judge Walton, despite accepting the key allegations as true and despite the clear structural irregularities those allegations revealed, further confirms that no district judge within the D.C.

*17*

District Court is institutionally capable of disentangling or remedying the systemic conflicts underlying this petition.

## E. Minute Orders as Devices of Denial of Access to the Courts

Federal courts are obligated not only to adjudicate, but to provide litigants meaningful access to the judicial process. An unexplained minute order that suddenly terminates litigation or removes a judge from review, especially when final relief or jurisdictional questions are involved, undermines the constitutional guarantee of access to the courts and the rule of law. See Bounds v. Smith, 430 U.S. 817 (1977). (recognizing that "access to the courts is a fundamental constitutional right" and may not be obstructed by the state). In the appellate context, the due-process protections extend to ensuring a litigant has a fair opportunity to challenge judicial action and secure a reasoned decision. See The Right to Appeal, 88 Case W. Res. L. Rev. 1057, 1069 (2013) (noting that procedural rules must not render appellate review "illusory").

In this case, the record demonstrates repeated reliance on "minute orders" rather than written opinions. The Middle District of Florida accepted a transferred case, issued standing orders and dismissed the proceeding by minute order even though it lacked jurisdiction under 8 U.S.C. § 1447(b). Meanwhile, the D.C. District Court reopened the case under a Rule 60(b) motion, ruled by minute order, and promptly closed it again—leaping over the usual written-opinion

*18*

process, thereby denying the petitioner a full and transparent basis for appeal. These minute-order closures prevent the petitioner from knowing why the court acted, foreclose meaningful briefing, and obstruct appellate review. The procedural structure thus becomes a trap: a final result rendered in a form that cannot reliably be reviewed, appealed or meaningfully challenged.

Such misuse of minute orders frustrates the institutional roles of the judiciary: they make decisions without reasoned explanation, deny litigants a record for review, and allow jurisdictional or disqualification questions to slip outside the scrutiny of appellate review. In effect, they become mechanisms of judicial evasion rather than adjudicative transparency.

The repeated use of minute orders—without accompanying findings, reasoning, or formal entry of judgment—effectively shields judicial decisions from appellate scrutiny. This tactic has prevented Petitioner from pursuing even a collateral or interlocutory appeal. As the D.C. Circuit has recognized, "[w]ithout an appealable order, the appellate court lacks jurisdiction." See In re Sealed Case, 151 F.3d 1059, 1063 (D.C. Cir. 1998). The lack of a final, reviewable order renders appellate remedies illusory.

The Constitution guarantees not merely a right to file papers in court, but to receive "a fair opportunity to challenge judicial action and secure a reasonable decision." See Bounds v. Smith, 430 U.S. 817 (1977).. The courts' systemic reliance on minute orders here

19

nullifies that guarantee and prevents the exercise of appellate rights under 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1), which depend on the existence of an appealable order.

## REQUEST FOR PROTECTIVE RELIEF

Petitioner respectfully requests that this Court exercise its supervisory authority to protect the integrity of the immigration A-file, which remains the central evidentiary record in every pending action. Despite repeated statutory requests under FOIA, and despite the A-file's central role in the naturalization proceedings, the Department of Justice and USCIS continue to withhold this file while simultaneously litigating against Petitioner based on its undisclosed contents. The government's continued concealment of the A-file—while entering appearances, filing motions, and invoking its contents creates an intolerable structural imbalance and violates due process as articulated in Goldberg v. Kelly, 397 U.S. 254 (1970).

The A-file is not privileged. The government has identified no statutory exemption under 5 U.S.C. §552(b), nor has it invoked any protective doctrine. The file contains immigration history, administrative actions, internal annotations, and the audit-trail metadata required to determine who accessed, edited, or relied upon it. Because DOJ attorneys (including those named in Petitioner's §1985(3) action) have participated in appellate proceedings without producing the file, Petitioner faces a substantial risk of evidentiary manipulation, alteration, or further withholding.

*20*

Given these circumstances and given the procedural misconduct already documented, Petitioner respectfully requests that this Court enter protective relief ensuring the file's preservation, neutrality, and full disclosure.

Accordingly, Petitioner requests:

1. Immediate Preservation. An order requiring all federal agencies and personnel with access to the A-file to preserve its contents, associated records, and the full access-log metadata without alteration or deletion.

2. Custodial Transfer. An order transferring physical or legal custody of the A-file to a neutral judicial authority such as the United States Marshals Service to prevent tampering, destruction, or continued suppression.

3. Full Production. An order compelling immediate disclosure of the complete and unredacted A-file to Petitioner, including all embedded documents, internal notes, inter-agency correspondence, and the full audit-trail access log.

This relief is proper under <u>Chambers v. NASCO</u>, 501 U.S. 32 (1991), the All Writs Act, 28 U.S.C. §1651(a), and the Court's inherent supervisory authority to prevent ongoing structural prejudice and maintain the integrity of judicial proceedings.

*21*

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons set forth in this petition, the circumstances presented here reflect a structural breakdown that no lower court is institutionally capable of resolving. Conflicting jurisdictional actions by the D.C. District Court and the Middle District of Florida, the continued suppression of Petitioner's federal A-File by multiple federal agencies, and the procedural paralysis that has followed in the D.C. Circuit have created a situation in which ordinary appellate review is unavailable and inadequate. These interlocking conflicts extend beyond the authority of any single court of appeals and now threaten fundamental guarantees of due process, access to the courts, and the orderly administration of federal judicial power.

Because the issues presented implicate structural integrity across multiple federal courts and agencies, and because no lower tribunal possesses the capacity to restore uniformity or remedy the ongoing constitutional harm, the exercise of this Court's supervisory power under the All Writs Act is warranted. Petitioner respectfully submits that only this Court can bring coherence to the fractured jurisdictional landscape, enforce the limits Congress imposed under 8 U.S.C. § 1447(b), and ensure that federal agencies do not evade judicial review through the suppression of essential records.

*22*

Accordingly, Petitioner respectfully requests that this Court:

1. Assert supervisory jurisdiction under 28 U.S.C. § 1651(a) to address structural conflicts that no lower court is empowered to resolve;

2. Declare that the Middle District of Florida acted without jurisdiction when it took action in a 1447(b) matter while appellate jurisdiction had vested in the D.C. Circuit;

3. Direct DOJ, USCIS, and DHS to produce Petitioner's complete certified A-File, as its suppression has impaired multiple proceedings across multiple federal courts and cannot be remedied through ordinary appellate processes;

4. Clarify the proper jurisdictional boundaries between the D.C. District Court, the D.C. Circuit, and the Middle District of Florida with respect to the matters affected by the suppressed A-File and the overlapping 1447(b) proceedings;

5. Issue a Protective Order regarding the A-file, directing (a) immediate preservation of the complete A-file and all related metadata, (b) transfer of custody to a neutral judicial authority to prevent alteration or concealment, and (c) full production of the unredacted A-file and complete audit-trail access log to Petitioner without further delay or agency withholding.

*23*

6. Issue such further supervisory relief as may be necessary to restore lawful judicial process, prevent ongoing constitutional injury, and ensure that federal courts and agencies operate within the jurisdictional limits established by Congress and this Court's precedents.

Date: 11 / 27 /2025      Respectfully submitted,

RAYON PAYNE, PRO SE
8815 Conroy Windermere Rd
Ste. #208
Orlando Florida 32835
Tel: 863-485-0550
Email: info@folksalert.com

*A1*

# APPENDIX

*A2*

## TABLE OF APPENDICES

### D.C. CIRCUIT ACTIONS

**APPENDIX A** - Structural Notice Filed in    A4
D.C. Circuit Filed: November 14, 2025

**APPENDIX B** - Notice of Missed Deadline    A11
/ Procedural Default by DOJ Filed:
November 10, 2025

**APPENDIX C** - Appellant's Judicial    A13
Notice of Mootness of Appellee's Extension
Motion with Memorandum of Law Filed:
November 25, 2025

**APPENDIX D** - Emergency Motion for    A28
Mandamus Relief (Reyes) Filed: November
10, 2025

### D.C. DISTRICT COURT ACTIONS

**APPENDIX E** - Min Order Denying Rule    A37
60(b) Motion Filed: September 29, 2025

**APPENDIX F** - Notice of Appeal from    A38
Rule 60(b) Ruling Filed: October 2, 2025

**APPENDIX G** - Min Order denying    A40
motion to disqualify Judge Reyes (FIOA)
Filed: September 22, 2025

*A3*

**APPENDIX H** - Min Order denying          A41
motion to disqualify DOJ (FIOA) Filed:
September 25, 2025

**APPENDIX I** - Order of Dismissing Civil     A42
Rights Action in Case No. 25-3358, Filed
November 19, 2025

**APPENDIX J** - Petitioner's Motion for        A52
Reconsideration  in Case No. 25-3358,
November 19, 2025

### MIDDLE DISTRICT OF FLORIDA ACTIONS

**APPENDIX K** - Min Order directing           A58
Petitioner to SHOW CAUSE Filed:
October 16, 2025

**APPENDIX L** - Min Order dismissing the    A59
case Filed: November 12, 2025

*A4*

## APPENDIX A

## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

RAYON PAYNE,
　　　Appellant,

V.　　　　　　　　　　　　　　　　Case No. 25-5355

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS)

　　　Appellee,
_____/

## STRUCTURAL NOTICE AND
## PRESERVATION OF RIGHTS

Appellant, Rayon Payne, respectfully submits this Structural Notice to preserve his constitutional rights, to inform the Court of material developments relevant to these proceedings, and to provide notice of potential escalation to the United States Supreme Court under applicable supervisory principles.

## I. PURPOSE AND SCOPE

This Notice is not filed to seek adversarial relief or to provoke conflict, but rather to preserve and safeguard rights that have been repeatedly placed at risk due to systemic procedural breakdowns. Appellant submits this Notice to inform the Court of significant structural irregularities, jurisdictional

*A5*

conflicts, and constitutional impairments that now bear directly on the integrity of these proceedings.

## II. BACKGROUND: CROSS-JURISDICTIONAL CONFLICT AND STRUCTURAL BREAKDOWN

This matter arises from the misapplication of 28 U.S.C. § 1447(b), wherein a § 1447(b) petition—triggered by USCIS misconduct involving the use of a non-existent conviction to deny citizenship—was transferred from the D.C. District Court to the Middle District of Florida. That transfer occurred over Appellant's express objection and in violation of § 1447(b), which vests jurisdiction solely in the court where the petition is filed. The Middle District of Florida, acting without jurisdiction, subsequently issued orders and dismissed the case. These actions occurred while the D.C. Circuit had active jurisdiction over an appeal from the D.C. District Court's denial of a Rule 60(b) motion—a motion which itself followed the improper transfer.

This jurisdictional confusion has resulted in simultaneous and conflicting proceedings in two judicial districts, one of which acted without legal authority. The appearance of conflict and the absence of structural safeguards are constitutionally troubling.

## III. EMERGENCE OF DOJ COUNSEL UNDER CONFLICTED CIRCUMSTANCES

In addition to the cross-jurisdictional conflict, the government's conduct further complicates the proceedings. DOJ counsel Derrick Petit—who is a named defendant in an active § 1985(3) (D.D.C. Case

*A6*

No. 1:25-cv-03358-RBW), a case involving allegations of intimidation and manipulation—entered an appearance in this appellate case after the dispositive motion deadline had expired. Mr. Petit also contacted Appellant directly by email in a manner that raised serious concerns of impropriety, especially in light of his status as a named defendant and the absence of any furlough or formal order authorizing communication.

Appellant has raised these concerns via a motion to disqualify, motion for stay, and motion for protective order—all pending. To date, DOJ has not responded substantively to Appellant's dispositive motion, nor has the Court acted on these protective filings. This silence has allowed DOJ to operate in a procedural gray area, one that compromises the integrity of the record and further prejudices Appellant.

## IV. RELATED PROCEEDINGS AND NOTICE

Appellant has filed judicial-misconduct complaints in this circuit, including one against Judge Ana C. Reyes. Similarly, in the Eleventh Circuit, four misconduct cases have been opened related to judicial actors including Judge Carlos Mendoza involved in the Florida proceedings in the transfer of the § 1447(b). Two supervisory writs are now pending before the United States Supreme Court.

*A7*

## Supervisory Writ Concerning the Middle District of Florida and the Eleventh Circuit

The supervisory writ presently pending before the Supreme Court concerns the Middle District of Florida's defiance of an Eleventh Circuit tolling order in the related civil-rights proceedings. That petition documents that the Middle District of Florida continued taking judicial action—including issuing standing orders and dismissing filings—despite an active tolling directive from the Eleventh Circuit. It further demonstrates that the district court exercised jurisdiction in a structurally conflicted matter in which multiple federal judges of that district were named defendants, thereby creating an institutional and constitutional breakdown that the Eleventh Circuit has been unable to correct.

## Supervisory Writ Concerning the D.C. District Court's Transfer of the § 1447(b) Case

The supervisory writ pending before the Supreme Court challenges the D.C. District Court's transfer of the § 1447(b) naturalization action to the Middle District of Florida despite the statutory bar against such transfers, the government's documented misuse of an A-file and a non-existent conviction, and the Plaintiff's invocation of § 1447(b) jurisdiction. That petition also addresses the D.C. District Court's refusal to adjudicate the case under § 1447(b), the use of unsigned minute orders to avoid creating reviewable rulings, and the government's ability to access and use the Plaintiff's immigration file while the Plaintiff himself was denied access to it. The supervisory writ explains that this conduct produced

*A8*

structural prejudice that cannot be remedied in the ordinary appellate process.

These writs are not theoretical—they are active proceedings rooted in documented procedural failure and constitutional injury.

## V. PREJUDICE ALREADY OCCURRED

Appellant respectfully places this Court on notice that prejudice is no longer a speculative concern—it has already occurred. This constitutional injury stems from a cascade of government actions and omissions, beginning with misconduct at United States Citizenship and Immigration Services (USCIS), where Appellant was denied naturalization based on a conviction that does not exist. That determination was made using suppressed evidence from Appellant's A-file—a file the government continues to conceal despite numerous motions and FOIA efforts.

The same pattern followed Appellant into the D.C. District Court, where Judge Reyes transferred a § 1447(b) case despite clear statutory bars to such a transfer. The Middle District of Florida then acted on the transferred case—issuing orders and ultimately dismissing it—while this Court was already seized of jurisdiction through a pending appeal. That cross-jurisdictional conflict cannot be undone.

In parallel, the Department of Justice has continued to represent the government while documented conflicted of misconduct in related § 1985(3) claims and while its own counsel, Derrick Petit, engaged in

*A9*

direct and unsolicited contact with Appellant during this appeal. Despite a pending motion to disqualify DOJ and to stay proceedings, DOJ has proceeded as though no rules or ethical obligations apply.

The government has refused to produce the A-file—an essential record for the adjudication of this case—while simultaneously entering appearances and litigating on issues directly implicated by that same file. The concealment of material evidence while asserting procedural rights places Appellant at a profound disadvantage and violates core principles of fairness and due process in lower court, he now faces before this court.

Finally, despite judicial complaints, protective motions, and ongoing writs at the U.S. Supreme Court, no meaningful action has been taken to address these systemic breakdowns. Appellant stands alone in the defense of his rights while every actor involved appears insulated from accountability.

The prejudice has occurred and is ongoing. The record reflects it. And unless rectified, this Court risks endorsing a pattern of structural failure that no litigant, represented or pro se, should endure.

## VI. PRESERVATION AND NOTICE OF POTENTIAL ESCALATION

Appellant respectfully submits this structural notice to preserve constitutional rights—not as a threat, but as a necessary act of record. All appropriate channels have been pursued: judicial misconduct complaints, motions for recusal, protective filings, and formal appeals. Despite these efforts, significant

*A10*

prejudice has already occurred. Misconduct that began at the agency level (USCIS) has now crossed jurisdictional boundaries, resulting in DOJ's continued participation despite procedural default, unresolved conflicts of interest, and improper communications by individuals named in related litigation.

Given this context, Appellant places this Court on formal notice that, should DOJ be permitted to proceed further in this matter—despite the existing record of conflict and breakdown—Appellant will seek recourse at the United States Supreme Court pursuant to the All Writs Act, 28 U.S.C. § 1651(a). The integrity of these proceedings is at stake, and Appellant has no alternative but to preserve the record and constitutional safeguards through appropriate escalation.

## VII. CONCLUSION

This case presents an unusual but urgent constitutional crossroad. The conduct by DOJ, the jurisdictional anomalies, and the structural silence now combine to create a situation that is incompatible with due process. Appellant respectfully urges the Court to take these facts into consideration and place appropriate safeguards to prevent further prejudice.

Date: 11/ 11/2025          Respectfully Submitted
                           RAYON PAYNE, PRO SE

*A11*

## APPENDIX B

## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT

RAYON PAYNE,
     Appellant,

V.                        Case No. 25-5355

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS)

     Appellee,
_____/

## APPELLANT'S NOTICE OF NON-RESPONSE AND REQUEST FOR COURT ACTION ON UNOPPOSED PROCEDURAL MOTIONS

1. On October 9, 2025, Appellant filed and served by U.S. Mail the following procedural motions:
   a. Motion to Disqualify the Department of Justice as Counsel on Appeal;
   b. Emergency Motion for Protective Order in Aid of Appellate Jurisdiction; and
   c. Emergency Motion to Stay District Court Transfer Order and All Proceedings in the Transferee Court Pending Appeal.
2. According to U.S. Postal Service tracking No. 9505515855765283882128, the package

*A12*

containing these motions was delivered to the Department of Justice in Washington, D.C., on October 15, 2025, at 4:43 a.m.

3. Under Fed. R. App. P. 27(a)(3)(A), any opposition was due within ten (10) days after service. Because service was by mail, Fed. R. App. P. 26(c) adds three (3) additional days, making Appellee's final deadline October 28, 2025.

4. As of this filing, Appellee has filed no opposition, extension request, or other response to any of the above motions. Appellee's only submission since service has been a notice of appearance and certificate of related cases, both ministerial filings required by the Clerk's standing order.

5. Appellant therefore respectfully requests that the Court:

    a. take notice that the time for response expired on October 28, 2025;

    b. treat the listed motions as unopposed under FRAP 27(a)(3)(A); and

    c. act on the motions and granting such relief as the Court deems appropriate under its inherent authority and the All Writs Act, 28 U.S.C. § 1651(a).

Date: 11/ 11/2025    Respectfully Submitted
                       RAYON PAYNE, PRO SE

*A13*

## APPENDIX C

## UNITED STATES COURT OF APPEALS
## DISTRICT OF COLUMBIA CIRCUIT


RAYON PAYNE,
   Appellant,

V.

   Case No. 25-5355
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES (USCIS)

   Appellee,

_____/

## APPELLANT'S JUDICIAL NOTICE OF STRUCTURAL DEFAULT AND NOTICE OF MOOTNESS OF APPELLEE'S EXTENSION MOTION WITH MEMORANDUM OF LAW

Appellant respectfully submits this combined

Judicial Notice and Notice of Mootness to clarify the

procedural posture controlling this appeal. The

record establishes that the Department of Justice

("DOJ"), acting for the Appellee, defaulted under

Federal Rule of Appellate Procedure 27 by failing to

## A14

oppose Appellant's pending procedural motions within the time required. DOJ's later motion for extension, filed November 13, 2025, does not address these motions, does not request relief from default, and is therefore moot. The Court cannot grant DOJ relief that DOJ never asked for, nor may it excuse a default DOJ never sought to cure. Because the unopposed Motion to Disqualify now stands as written, DOJ is barred from participation until the A-file is produced and certified; accordingly, no dispositive briefing schedule can proceed until threshold issues are resolved.

## I. PROCEDURAL BACKGROUND

On October 9, 2025, the Court issued a Standing Order requiring DOJ to file its appearance and any procedural motions by November 10, 2025, and to file any dispositive motions by November 24, 2025.

## A15

The Standing Order did not toll or suspend deadlines in light of the federal furlough.

On October 14, 2025, Appellant filed three procedural motions—a Motion to Disqualify DOJ, a Motion to Stay, and a Motion for Protective Order. Service was completed by U.S. Mail on October 15, 2025. Under FRAP 27(a)(3)(A), oppositions were due ten days after service, and FRAP 26(c) extends the period by three days for mail service. Accordingly, DOJ's deadline to oppose the motions was October 28, 2025. DOJ filed no opposition, no extension request, and no notice concerning its inability to respond.

In addition, DOJ filed several notices on November 10, including its Entry of Appearance and its Certificate as to Parties and Related Cases. These filings confirm that DOJ was able to access its

## A16

internal systems, access the Court's electronic filing system, and participate actively in this appeal. DOJ's affirmative filings rebut any argument that the furlough prevented timely participation. Because DOJ chose to file the documents necessary to maintain its standing in the case, while intentionally declining to oppose the procedural motions, DOJ's failure to respond constitutes conscious waiver—not inability or excusable neglect.

Following DOJ's inaction, Appellant filed multiple notices informing the Court of DOJ's October 28 default, the existence of structural record conflicts involving the suppressed A-file, and the jurisdictional conflict created when the Middle District of Florida acted on a transferred case without jurisdiction. Appellant also filed a dispositive motion on November 10.

*A17*

On November 13, DOJ filed a motion for extension of time. That filing sought additional time only to file a dispositive motion and to oppose Appellant's dispositive motion. DOJ did not mention the procedural motions, did not request leave to oppose them late, did not request relief from the October 28 deadline, did not invoke excusable neglect, and did not seek any form of retroactive cure. Accordingly, DOJ's default remains unaddressed and fully operative.

## II. JUDICIAL NOTICE OF STRUCTURAL DEFAULT

The record establishes that DOJ defaulted under FRAP 27(a)(3)(A). That rule provides that failure to oppose a motion "may be treated as consent to the motion." Courts regularly enforce this provision. In Fox v. American Airlines, Inc., 389 F.3d 1291, the D.C. Circuit held that unopposed motions may be

## A18

granted as conceded. Also in Azar v. Garza, 925 F.3d

1291 (D.C. Cir. 2019) the Court reiterated that

failure to respond constitutes waiver. Likewise, the

Ninth Circuit has held that a trial court may grant a

motion solely because no opposition was filed. United

States v. Real Property ,545 F.3d 1134 (9th Cir.

2008).

DOJ's failure to oppose must therefore be treated as

waiver. That waiver is reinforced by DOJ's own

conduct. DOJ demonstrated full capacity to respond

when it filed its Entry of Appearance and Certificate

of Parties and Related Cases on November 10. These

filings required active participation by DOJ counsel,

including access to the Court's ECF system and

internal DOJ systems. Had the furlough truly

prevented DOJ from acting, DOJ could not have filed

anything on November 10. Instead, the record shows

*A19*

DOJ chose to respond only to the filings that preserved its procedural posture, while consciously ignoring the filings that required substantive response. That selective participation defeats the credibility of any furlough justification and confirms DOJ's default was voluntary.

Because DOJ never requested relief from the deadline, the default cannot be excused. Courts may not rescue litigants from procedural forfeiture, nor may they grant relief not requested. See Carducci v. Regan, 714 F.2d 171 (D.C. Cir. 1983). DOJ did not ask for relief from default; accordingly, the Court is not empowered to provide it. DOJ's waiver is therefore complete.

### III. NOTICE OF MOOTNESS OF DOJ'S EXTENSION REQUEST

DOJ's November 13 motion for extension is moot because DOJ is currently barred from participating

*A20*

in this appeal. Appellant's Motion to Disqualify

expressly states that DOJ may not participate unless

and until the complete A-file is produced and

certified. Because DOJ did not oppose this motion,

its terms stand as written. Until the A-file is

produced, DOJ is disqualified.

Furthermore, the Motion to Disqualify provides that

no substitute or conflict-free counsel may appear on

the government's behalf unless the A-file is

produced. As no A-file has been produced, Appellee

has no lawful representative who may file dispositive

motions, oppose Appellant's dispositive motion, or

request extensions of time.

Even if DOJ were not disqualified, DOJ's own filing

states they cannot meet the November 24

dispositive-motion deadline. But more importantly,

because DOJ is disqualified and barred from

*A21*

appearing, the deadline cannot be met by any authorized representative of the United States. The Supreme Court holds that courts must resolve threshold issues before progressing to the merits. Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422 (2007); Steel Co. v. Citizens for Better Environment, 523 U.S. 83 (1998). Disqualification, stay, and record-integrity issues are threshold matters that must be addressed first.

Accordingly, DOJ's November 13 extension request cannot be granted, and the request is moot.

### IV. MEMORANDUM OF LAW / STANDARD

Under FRAP 27(a)(3)(A), failure to oppose a motion permits the Court to treat the motion as unopposed. The D.C. Circuit applies this rule strictly. See Fox, 389 F.3d at 1294; J.D. v. Azar, 925 F.3d at 1299. Silence constitutes waiver when a party has notice

*A22*

and the ability to respond. See FDIC v. Meyer, 510

U.S. 471 (1994). A court may not create relief sua

sponte to cure defaults a party never sought to

remedy. Carducci, 714 F.2d at 177. The Supreme

Court requires courts to resolve threshold procedural

issues—such as jurisdiction, conflicts of interest, and

record integrity—before addressing merits.

The disqualification motion, standing unopposed,

imposes mandatory preconditions on DOJ's

participation, including the production of the A-file.

These conditions are binding until the Court rules

otherwise. No participation by DOJ or substitute

counsel is permitted without satisfying these

conditions. Consequently, DOJ has no lawful

mechanism to file dispositive motions or to oppose

Appellant's dispositive motion until these threshold

issues are resolved.

*A23*

## V. NOTICE REGARDING THE COURT'S SUPERVISORY AUTHORITY

Appellant further observes that the circumstances reflected in the docket may implicate the Court's inherent supervisory authority over the integrity of appellate proceedings. The record shows that Appellee has attempted to participate in this appeal while withholding the complete administrative A-file that is required for meaningful review and that is expressly required by the unopposed Motion to Disqualify as a condition of participation. The unresolved status of the A-file, combined with Appellee's selective filings during the default period and its continued attempt to litigate despite disqualification, raises issues touching upon record completeness, adherence to this Court's Standing Order, and counsel's obligations under FRAP 46.

## A24

Appellant does not request sanctions at this time and does not seek any specific relief beyond what is already identified in this filing. This notice is provided solely to preserve the issue and to ensure the Court is aware that the conduct described herein falls within the supervisory authority the Court retains to protect the integrity of its proceedings. Appellant expresses no position as to whether the Court should exercise that authority, but notes that the conditions giving rise to this appeal's unopposed posture are fully documented in the docket.

*A25*

## VI. CONCLUSION

For the reasons stated above, the record establishes that Appellee defaulted under FRAP 27 by failing to oppose Appellant's procedural motions within the required time and by failing to request any form of relief from that default. Because the Court cannot cure a default that Appellee never sought to remedy, and because the Motion to Disqualify stands unopposed and imposes mandatory conditions on Appellee's participation, the government is procedurally barred from taking part in further stages of this appeal unless and until those threshold issues are resolved.

The A-file condition contained in the unopposed Motion to Disqualify further reinforces this posture. That motion provides that DOJ may not participate unless the complete A-file is produced and certified.

### A26

If DOJ does not produce the A-file, disqualification remains in effect and DOJ cannot participate. Conversely, if DOJ were to produce the A-file, the act of production would necessarily acknowledge the existence and relevance of material that was previously withheld or unavailable in the lower court, thereby confirming the conflict of interest and record-integrity concerns that the Motion to Disqualify identifies. In either scenario—non-production or production—the government remains unable to oppose because the conditions underlying disqualification are confirmed rather than cured. Accordingly, there is no procedural mechanism by which DOJ can presently contest Appellant's filings.

The present posture of this appeal is therefore unopposed. Appellant's procedural motions are ripe

*A27*

for resolution as submitted, and Appellant's

dispositive motion likewise remains unopposed.

Once the Court addresses the unresolved threshold

issues, the appeal proceeds in the unopposed posture

reflected by the docket and the effect of DOJ's

default under FRAP 27.

Date: 11/ 25/2025        Respectfully Submitted
                         RAYON PAYNE, PRO SE

*A28*

## APPENDIX D

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

### IN RE: RAYON PAYNE
Petitioner

Case No. 25-5349

## SUPPLEMENTAL EMERGENCY
## MOTION FOR RELIEF

### IN SUPPORT OF PENDING
### WRIT OF MANDAMUS

### (RELATING TO CASE NO. 1:25-cv-03186-ACR)

COMES NOW Petitioner Rayon Payne, and respectfully submits this Supplemental Emergency Motion for Relief pursuant to the All Writs Act, 28 U.S.C. § 1651, and Fed. R. App. P. 21, in further support of his pending Petition for Writ of Mandamus. This Motion addresses new and continuing harm arising from the District Court's refusal to act on a timely and properly filed request for clerk default and relief from Standing Order 25-55, in violation of Federal Rule of Civil Procedure 55(a) and applicable due process protections.

A29

## NEW FACTUAL DEVELOPMENTS

1. On October 28, 2025, Petitioner filed a Motion for Relief from Standing Order 25-55 and for Entry of Clerk Default in Payne v. DHS, Case No. 1:25-cv-03186-ACR. That motion:
   - Requested relief from the stay imposed by Standing Order 25-55;
   - Sought a mandatory entry of default under Rule 55(a);
   - Included a request for disqualification of Judge Reyes due to structural conflicts already briefed in the pending mandamus petition.
2. To date no action has been taken on the motion—despite the Clerk's duty being purely ministerial under Rule 55(a), and despite the Standing Order itself instructing parties to seek relief by motion, which Petitioner has done.
3. The continued inaction effectively denies Petitioner both procedural and substantive rights—further compounding the harm described in the Writ and placing the Clerk in an untenable position of enforcing an order without proper judicial review.

## LEGAL POSTURE AND HARM

4. The original Petition for Writ of Mandamus detailed significant structural irregularities, including the improper reassignment and continued exercise of jurisdiction by Judge Ana C. Reyes—who is a named defendant in related civil rights litigation under 42 U.S.C. §

*A30*

1985(3), and thus constitutionally barred under 28 U.S.C. § 455(a) from presiding over matters where her impartiality might reasonably be questioned.

5. This supplemental motion addresses a new and compounding layer of obstruction: the District Court's refusal to permit the Clerk's entry of default under Federal Rule of Civil Procedure 55(a) in a FOIA matter, despite the government's failure to plead or otherwise defend the action. Rule 55(a) mandates that:

   *"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend... the clerk must enter the party's default."* (Fed. R. Civ. P. 55(a), emphasis added).

6. The rule is not discretionary, as confirmed in <u>United States v. $23,000 in United States Currency</u>, 356 F.3d 157 (1st Cir. 2004) ("Upon a showing that a party against whom judgment is sought has failed to plead or otherwise defend, entry of default by the clerk is not a matter of discretion").

7. The District Court's own Standing Order 25-55 requires that if a party seeks relief from the automatic stay imposed by the Order, it must do so by motion under Section 2. Petitioner complied with this procedure: on October 28, 2025, Petitioner filed a motion seeking relief from the Standing Order and simultaneously requested entry of default. That motion has been served on the Department of Justice and is fully ripe for adjudication.

*A31*

8. The inaction by the Court, despite proper procedural compliance, reflects an active obstruction of Petitioner's statutory rights under FOIA and Rule 55(a). This is not simply administrative delay—it is a continuation of constitutional harm, now being carried out not only by the Department of Justice but by the Court itself, which remains in conflict and refuses to disqualify.

9. The doctrine of unclean hands, typically applied to litigants, now attaches to the Court's own conduct. Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806 (1945), holds that a party (or institution) cannot seek equitable relief when it is complicit in the wrong or has engaged in bad faith or inequitable conduct. Here, the Court—after transferring a case without jurisdiction, and while remaining under a cloud of disqualification—now obstructs mandatory procedures required by both the Federal Rules and the Constitution.

10. No Standing Order, including 25-55, can override a statutory or constitutional command. The failure to rule on a properly filed motion for relief—within the specific procedure required by the Standing Order itself—transforms an internal policy into a tool of unconstitutional delay.

11. Petitioner has exhausted every procedural avenue available within the District Court. There is no meaningful legal remedy remaining because the presiding judge, Ana C. Reyes, has refused to disqualify herself despite being a named defendant in a pending

*A32*

42 U.S.C. § 1985(3) civil rights case, and despite having transferred a § 1447(b) naturalization case in direct violation of 8 U.S.C. § 1447(b)—which vests exclusive jurisdiction in the district where the applicant resides and prohibits transfer. See United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004). Petitioner placed Judge Reyes on structural notice of these conflicts and filed a formal motion for disqualification of both Judge Reyes and DOJ, which she denied via minute order without explanation.

12. Pursuant to 5 U.S.C. § 552(a)(4)(F), if a court determines that government officials "arbitrarily or capriciously withheld documents," it must forward findings to the Office of Special Counsel for administrative sanctions. Courts have long held that willful noncompliance with FOIA warrants consequences. See Judicial Watch, Inc. v. U.S. Dep't of Commerce, 34 F. Supp. 2d 28 (D.D.C. 1998) ("An agency's refusal to comply with FOIA mandates cannot be countenanced where the statutory rights of the requester are clear and immediate."); see also McGehee v. CIA, 697 F.2d 1095 (D.C. Cir. 1983) ("Congress clearly intended that FOIA be construed broadly to favor disclosure and that the agency bear the burden of sustaining its actions.").

13. Here, DOJ has not only failed to produce the A-file—it has refused to even appear to defend the FOIA case. At the same time, the District Court has compounded this harm by failing to rule on Petitioner's motion for relief from

*A33*

Standing Order 25-55, thereby enabling DOJ's continued evasion and obstructing the Clerk's statutory obligation under Rule 55(a) to enter default. Failure to enter default where a party has failed to defend is not a discretionary act.

14. A court that actively suppresses the consequences of its own violations—while shielding the misconduct of a party before it—cannot be deemed impartial under constitutional standards. See Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847 (1988) (recusal necessary where judge's failure to disqualify "created a risk of injustice to the parties and undermined public confidence in the judicial process"). The appearance of impropriety has escalated into an active impediment to justice—one that this Court is now constitutionally obligated to resolve.

## IMPACT ON RELATED PROCEEDINGS

15. Granting the relief requested in this emergency supplemental motion would resolve the FOIA matter in its entirety, thereby mooting the pending Writ of Mandamus. Petitioner respectfully notes that the only remaining dispute subject to Mandamus review pertains to the District Court's obstruction of default procedures and failure to act on a valid motion for relief.

16. Additionally, Petitioner's Rule 60(b) appeal of the unlawful § 1447(b) transfer is proceeding on a separate track before this Court, and the related civil rights action in the District court—raising constitutional violations under

*A34*

42 U.S.C. § 1985(3)—has already been reassigned by the calendar committee.

17. Thus, resolution of this FOIA matter would allow the Court to narrow its focus to the direct appeal and avoid unnecessary entanglement in the parallel Mandamus petition.

## CONCLUSION

18. The facts underlying this supplemental motion are no longer in dispute: the Department of Justice has failed to appear, the Clerk refuses to enter default absent judicial relief, and the assigned District Judge—despite being structurally conflicted—has denied both recusal and action on the merits.

19. Petitioner has fully complied with all procedural prerequisites, and no further remedy is available within the District Court. Meanwhile, the § 1447(b) transfer and Rule 60(b) violations are already pending before this Court in separate proceedings, leaving the FOIA matter as the only unresolved issue.

20. The constitutional harm—both in terms of access to records and access to a neutral tribunal—is immediate, ongoing, and institutionally corrosive. If this Court does not act, no court will. Accordingly, Petitioner respectfully urges this Court to grant emergency relief and issue such orders as are necessary to restore the integrity of the judicial process.

*A35*

## RELIEF REQUESTED

Petitioner respectfully requests that this Court:

a. Grant emergency relief by ordering the Clerk of the U.S. District Court for the District of Columbia to enter default against the Department of Justice in accordance with Fed. R. Civ. P. 55(a), based on the agency's failure to plead or otherwise defend in the FOIA action;

b. Direct the District Court to adjudicate Petitioner's pending motion for relief from Standing Order 25-55 without further delay, or alternatively, vacate that Order insofar as it obstructs the Clerk's duty under Rule 55(a) or Petitioner's access to judicial process;

c. Reassign the FOIA case to a different judge on remand, pursuant to 28 U.S.C. § 455(a);

d. Refer the Department of Justice to the Office of Special Counsel under 5 U.S.C. § 552(a)(4)(F), for failing to produce Petitioner's A-file and refusing to appear or defend the FOIA action;

e. Declare that Standing Order 25-55 cannot override constitutional rights or mandatory statutory procedures under FOIA and Rule 55(a), and that judicial disqualification may not be circumvented by internal administrative orders;

f. Require all future rulings in the FOIA case to be issued in formal written orders, not minute entries, to ensure transparency and preserve constitutional and appellate rights;

*A36*

g. Retain jurisdiction over the FOIA matter, or alternatively, remand with specific instruction that the newly assigned District Judge resolve the FOIA claims expeditiously and in conformity with statutory mandates; and

h. Grant such other and further relief as may be just and proper in light of the constitutional and institutional issues presented.

Date: 11/ 11/2025          Respectfully Submitted
                          RAYON PAYNE, PRO SE

*A37*

## APPENDIX E

MINUTE ORDER denying 16 Motion for Relief from Judgment. In this Circuit, "physical transfer of the original papers in a case to a permissible transferee forum deprives the transferor circuit of jurisdiction to review the transfer." *Starnes v. McGuire*, 512 F.2d 918, 924 (D.C. Cir. 1974) (en banc). Accordingly, the Court DENIES the Motion. Signed by Judge Ana C. Reyes on 09/29/2025. (lcacr2) (Entered: 09/29/2025)

*A38*

## APPENDIX F

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAYON PAYNE,
Plaintiff / Appellant,

v.                                    Civil No. 1:25-cv-01952

U.S. CITIZENSHIP AND
IMMIGRATION SERVICES, (USCIS)

Defendant / Appellee.
_____/

## NOTICE OF APPEAL

1. Notice is hereby given that Rayon Payne, the Plaintiff in the above-captioned case, hereby appeals to the United States Court of Appeals for the District of Columbia Circuit from the final order entered in this action on September 29, 2025, by the Honorable Ana C. Reyes, denying Plaintiff's motion under Federal Rule of Civil Procedure 60(b).
2. This appeal arises from a naturalization action originally filed under 8 U.S.C. § 1447(b), which vests exclusive jurisdiction in the district court upon the government's failure to timely act on a naturalization application. The Rule 60(b) motion sought to vacate the improper transfer of that § 1447(b) action, citing violations of due process, judicial disqualification, and government suppression of evidence material to the claim.

*A39*

3. Accordingly, this appeal encompasses the denial of the Rule 60(b) motion and necessarily implicates the District Court's failure to fulfill its statutory obligation under § 1447(b), along with related constitutional and procedural violations.
4. 4. Plaintiff respectfully appeals from that adverse final ruling.

Date: 11/ 11/2025          Respectfully Submitted
                          RAYON PAYNE, PRO SE

*A40*

## APPENDIX G

MINUTE ORDER denying 5 Motion to Disqualify Judge. While Plaintiff cites to 28 U.S.C. § 455, Plaintiff does not point to any facts meeting the standard contained in that statute. That the Court transferred Plaintiff's immigration case, No. 25-cv-1952, to a more suitable forum without deciding the merits does not "reasonably" raise questions about its "impartiality" to adjudicate this FOIA case, *id.* § 455(a), nor constitute "personal bias or prejudice concerning a party," *id.* § 455(b)(1). Plaintiff's Motion otherwise makes only conclusory statements about the Court's ability to fairly adjudicate this case. The Court DENIES the Motion. Signed by Judge Ana C. Reyes on 09/22/2025. (lcacr2) (Entered: 09/22/2025)

*A41*

## APPENDIX H

MINUTE ORDER denying 9 Motion to Disqualify Counsel. The Court does not have the authority to disqualify the entirety of the Department of Justice from serving as counsel to the Defendant. Under 28 U.S.C. § 516, "the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Signed by Judge Ana C. Reyes on 09/25/2025. (lcacr2) (Entered: 09/25/2025)

*A42*

## APPENDIX I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAYON PAYNE,
    Plaintiff,

V.                                                        Case No. 25-3358

ANA C. REYES, et al.,
    Defendants.
_____/

### ORDER

The plaintiff—Rayon Payne, proceeding pro se—brings this civil action against United States District Court Judge Ana C. Reyes, Department of Justice employees Derrick A. Petit, Oluwatoyin Abejide, and Shadae Beaver, and ten unidentified John Doe defendants. See generally Complaint for Declaratory Judgment Pursuant to 42 U.S.C. § 1985(2) and 1985(3) (Conspiracy to Interfere with Civil Rights Under Color of Law) ("Compl."), ECF No. 1. The plaintiff alleges that he has been the victim of a "persistent and escalating violation of [his] constitutional rights by individuals acting under color of federal authority" and asserts claims pursuant to 42 U.S.C. §§ 1985(2) and 1985(3), 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, and the Due Process Clause of the Fifth Amendment. Id. 1. The plaintiff seeks declaratory judgment and various forms of equitable relief. Id. ¶¶ 103–09.

*A43*

The plaintiff's allegations all appear to stem from his application for United States citizenship and subsequent petition under 8 U.S.C. § 1447(b).[1]  See id. at 1–2, 8.  The plaintiff is "a Black immigrant from Guyana" and a Florida resident who applied for United States citizenship "through the N-400 process."  Id. ¶¶ 19, 25.  "Upon receiving no final adjudication of his naturalization application, [the p]laintiff sought relief by filing for a writ of mandamus in the

Middle District of Florida, requesting the agency be compelled to issue a decision." Id.    26.  According to the plaintiff, the District Court for the Middle District of Florida "failed to act meaningfully," so he "voluntarily dismissed[ed] the action and fil[ed] a timely petition under 8 U.S.C. § 1447(b) in the United States District Court for the District of Columbia."  Id. Judge Ana C. Reyes, a member of this Court, was assigned the plaintiff's Section 1447(b) petition.  Compl.    27.  According to the plaintiff, Judge Reyes "shielded the Department of Justice  from  scrutiny  [and]  grant[ed]  [the Department of Justice] exclusive access to [the p]laintiff's immigration 'A-file' while denying [the p]laintiff access . . . through procedural mechanisms designed to evade appellate review."  Id.    3.  The plaintiff alleges that, in response to Judge Reyes' refusal to provide him with access to his "A-file", he "fil[ed] a Supervisory Writ to the United States Supreme  Court  and  initiat[ed]  a  Freedom  of

---

[1] Section 1447(b) provides that in certain circumstances, a naturalization applicant "may apply in the United States district court for the district in which the applicant resides for a hearing on the matter."  18 U.S.C. § 1447(b).

*A44*

Information Act (FOIA) lawsuit to access the very file withheld from him." Id.    4.

The FOIA lawsuit was assigned to Judge Reyes, who "issued rulings, thereby entangling herself in a case whose subject matter overlapped with the claims for which she was already under supervisory challenge." Id.    5.    Ultimately, Judge Reyes transferred the plaintiff's immigration case to the Middle District of Florida, his home venue. Id.    28.

The plaintiff asserts that Defendant Petit "represented the United States Citizenship and Immigration Services (USCIS) in [the p]laintiff's immigration litigation [and] conspired to deny him access to his immigration file and materially contributed to unconstitutional procedural conduct." Id.    21.    The plaintiff asserts that Defendant Abejide "was listed as a participant in the litigation related to [the p]laintiff's immigration case in the District of Columbia [and] knowingly participated in conduct under color of federal law that contributed to the deprivation of his constitutional and statutory rights."    Id.    22.    The plaintiff asserts that Defendant Beaver "was identified as a participant in the defense of the government in [the p]laintiff's proceedings [and] played a supporting role in the discriminatory and unconstitutional actions that are the basis for this complaint." Id.    23. The plaintiff identified the ten John Doe defendants only as "individuals whose identities are currently unknown to [the p]laintiff but who are believed to have participated directly or indirectly in the acts alleged

*A45*

in this Complaint." Id.    24. To date, the defendants have not been served with a copy of the Complaint.[2]

## I. STANDARDS OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  In making an assessment under Rule 12(b)(6), "the Court must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged."   Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).  Although the Court must "assume [the] veracity" of any "well-pleaded factual allegations" in a complaint, conclusory allegations "are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    Id. at 678 (citing Twombly, 550 U.S. at 555). Also, the Court need not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff if those

---

[2] The same day he filed his Complaint, the defendant also filed a Motion for Protective Order and Incorporated Memorandum of Law, ECF No. 3, and a Motion for Service by U.S. Marshals, ECF No. 5.

*A46*

inferences are not supported by the facts set out in the complaint." Hettinga, 677 F.3d at 476.

The Court may dismiss a complaint sua sponte under Rule 12(b)(6) if "it is patently obvious" that the plaintiff cannot "prevail[ ] on the facts alleged in his complaint." Baker v. Director, U.S. Parole Comm'n, 916 F.2d 725, 727 (D.C. Cir. 1990). The Court appreciates that because the plaintiff is pro se, his filing with the Court must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "Even under a liberal pro se standard, dismissal is appropriate where the plaintiff's complaint provides no factual or legal basis for the requested relief." Strunk v. Obama, 880 F. Supp. 2d 1, 3 (D.D.C. 2011). And, a Court "shall dismiss [a] case at any time" it "determines that . . . the action . . . is frivolous." 28 U.S.C. § 1915(e)(2)(B)(i). A "complaint is properly dismissed as frivolous . . . if it is clear from the face of the pleading that the named defendant is absolutely immune from suit on the claims asserted." Crisafi v. Holland, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

## II. ANALYSIS

The Court will first address the plaintiff's claims against Judge Reyes before addressing the plaintiff's claims against Petit, Abejide, and Beaver.[3]

---

[3] The plaintiff named John Doe 1-10 as defendants in the case caption. Compl. at 1. However, they are not named in any of the plaintiff's six causes of action. Moreover, the plaintiff has not provided any factual allegations relating to John Doe 1-10 and, therefore, dismissal is appropriate as to these defendants pursuant to Federal Rule of Civil Procedure 8(a). See Nolan v.

*A47*

A. The Plaintiff's Claims Against Judge Reyes

The plaintiff's allegations against Judge Reyes are all based on decisions she rendered in her role as a United States District Court Judge.  See Compl. 20.  Accordingly, because the complaint is predicated on her decisions rendered in a case within her jurisdiction, Judge Reyes has judicial immunity. Mirales v. Waco, 502 U.S. 9, 11-13 (1991); Sindram v. Suda, 986 F.2d 1459, 1460 (D.C. Cir. 1993).  Judicial immunity "is an immunity from suit, not just from ultimate assessment of damages" and "is overcome only in two sets of circumstances."  Mirales, 502 U.S. at 11.  "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity" and "[s]econd, a judge is not immune for actions, through judicial in nature, taken in the complete absence of all jurisdiction."  Id. at 11–12.    Here, taking the allegations in the Complaint as true, the Court finds that neither exception applies and, therefore, all claims against Judge Reyes are dismissed as "patently frivolous." See Caldwell v. Kagan, 777 F. Supp. 2d 177, 179 (D.D.C. 2011), aff'd, 455 F. App'x. 1 (D.C. Cir. 2011) (finding claims against judges are patently frivolous because federal judges are absolutely immune from

Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 270 F. Supp 3d 167, 172 (D.D.C.); see also Turan Petroleum, Inc. v. Ministry of Oil & Gas of Kazakhstan, 406 F. Supp. 3d 1, 1 n.1 (2019) ("The body of the Complaint contains no allegations concerning unidentified defendants 'Does from 1 to 100;' rather, these defendants are named only in the case caption . . . Lacking any factual allegations relating to [Does from 1 to 100], [the plaintiffs'] Complaint does not m[e]et Rule 8(a)'s requirements, and therefore dismissal is appropriate as to th[ese] defendant[s]." (internal quotations and citations omitted)).

### A48

lawsuits predicated on their official acts);  Fleming v. United States, 847 F. Supp. 170, 172 (D.D.C. 1994), cert. denied, 513 U.S. 1150 (1995) (deeming "meritless" an action against "judges who have done nothing more than their duty"); Pindell v. Pasichow, No. 25-cv-1591 (UNA), 2025 WL 2576311, at *2 (D.D.C. Sept. 5, 2025) (dismissing claims against judicial defendants as "patently frivolous" because the claims were predicated on their decisions rendered in cases within their jurisdiction).

B. The Plaintiff's Claims Against Petit, Abejide, and Beaver

The plaintiff generally alleges that the remaining named defendants, three Department of Justice employees, conspired with Judge Reyes to deprive him of his rights.  See generally Compl.  Count 1, Count 5, and Count 6 allege conspiracies under subsections (2) and (3) of 42 U.S.C. §§ 1985 "Conspiracy to interfere with civil rights."  "A common element of both [subsections] of § 1985 is the existence of an actual conspiracy."  Burnett v. Sharma, 511 F. Supp. 2d 136, 144 (D.D.C. 2007). The elements of civil conspiracy are

(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one or more of the parties to the agreement; (4) which was done pursuant to and in furtherance of the common scheme.

Id. (quoting Halberstam v. Welch, 705 F.2d 472, 477 (D.C. Cir. 1983).  To support a conspiracy, a plaintiff must make more than "[c]onclusory allegations of an

*A49*

agreement." Id. (citing Brady v. Livingood, 360 F. Supp. 2d 94, 104 (D.D.C. 2004) and Graves v. United States, 961 F. Supp. 314, 321 (D.D.C. 1997)). But here, conclusory allegations are all the plaintiff offers. See Compl. at 7. The complaint "fails to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants." McCreary v. Heath, No. CIV.A. 04-0623 PLF, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005). The Court cannot infer on these facts that any conspiracy existed, thus it is "patently obvious" that the plaintiff cannot prevail on the facts alleged in the complaint. See Baker, 916 F. 2d at 725–26. The Court will therefore sua sponte dismiss Count One, Count Five, and Count Six pursuant to Federal Rule of Civil Procedure 12(b)(6).

Count 2 alleges a deprivation of the plaintiff's rights under 42 U.S.C. § 1983. "To state a claim under [Section] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, (1988) (citations omitted); see also Hoai v. Vo, 935 F.2d 308, 312 (D.C. Cir. 1991). The three remaining named defendants are identified as Department of Justice employees and, therefore, federal officials whose actions would have been taken under color of federal law. See Compl. at 7. And, § 1983 "does not apply when federal officials act under color of federal law." L. Xia v. Tillerson, 865 F. 3d 643, 658 (D.C. Cir. 2017). Therefore, the Court will sua sponte dismiss

*A50*

Count Two pursuant to Federal Rule of Civil Procedure 12(b)(6).

Similarly, Count 3 alleges a violation of the Equal Protection Clause of the 14th Amendment.[4] Because the Fourteenth Amendment applies only to the states and not to the federal government, U.S. Const. amend. XIV § 1, the Court will sua sponte dismiss Count 3 pursuant to Federal Rule of Civil Procedure 12(b)(6).

Count 4, the only remaining count, alleges that the remaining named defendants deprived him of his Fifth Amendment right to both procedural and substantive due process. Compl. ¶¶ 73–83. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." Reed v. Goertz, 598 U.S. 230, 236 (2023) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990); see Hurd v. District of Columbia, 147 F.4th 1036, 1043 (D.C. Cir. 2023). The plaintiff alleges only that Petit, Abejide, and Beaver "actively participated in the venue transfer maneuver," which

---

[4] The plaintiff titled Count 3 as "Discrimination Based on Race and National Origin (Equal Protection Clause of the Fourteenth Amendment and Federal Law)," but the only reference to any other "federal law" is the count's final line stating that the "Plaintiff seeks a declaratory judgment that [the d]efendants' conduct constituted unconstitutional discrimination in violation of the Equal Protection Clause and federal anti-discrimination law." Compl. 72. Because Count 3 therefore alleges only "constitutional" discrimination and because the plaintiff has alleged "statutory" discrimination in other counts, the Court will treat Count 3 only as a claim under the Equal Protection Clause of the Fourteenth Amendment.

## A51

"demonstrate[s] concerted efforts to deprive [the p]laintiff of due process." Compl. ¶¶ 76, 80. These claims consists solely of "labels and conclusions" that "will not do." See Twombly, 550 U.S. at 545. The plaintiff has not alleged "factual content that allows the court to draw [a] reasonable inference that the defendant[s] [are] liable" for any Fifth Amendment violation. See id. at 556. Rather, he has merely concluded that these defendants "actively participated in the venue transfer maneuver" without providing any indication of how they participated or, more fundamentally, of how the transfer deprived him of due process. Compl. 80. Thus, the Court will sua sponte dismiss Count Four pursuant to Federal Rule of Civil Procedure 12(b)(6). Accordingly, it is hereby

ORDERED that the Complaint, ECF No. 1, is DISMISSED WITHOUT PREJUDICE. It is further ORDERED that case is DISMISSED WITHOUT PREJUDICE. It is further ORDERED that the plaintiff's Motion for Protective Order, ECF No. 3, is DENIED as moot. It is further ORDERED that the plaintiff's Motion for Service by U.S. Marshals, ECF No. 5, is DENIED as moot. It is further ORDERED that the case is CLOSED. SO ORDERED this 19th day of November, 2025.

REGGIE B. WALTON United States District Judge

*A52*

## APPENDIX J
## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

RAYON PAYNE,
    Plaintiff,

V.

    Case No. 25-3358 (RBW)

ANA C. REYES, et al.,
    Defendants.

_____/

## PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER DISMISSING COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff Rayon Payne respectfully moves for reconsideration of the Court's November 19, 2025 Order dismissing the Complaint. The dismissal is irreconcilable with the Court's own findings, the controlling statute, and binding Supreme Court precedent. Reconsideration is warranted to correct a clear legal error and prevent manifest injustice.

## I. THE COURT ACCEPTED THE TRANSFER—AND THAT TRIGGERS § 1447(b)

On page 5 of the dismissal order, this Court expressly stated: "Here, taking the allegations in the Complaint as true, the Court finds that neither exception [to judicial immunity] applies and,

## A53

therefore, all claims against Judge Reyes are dismissed as 'patently frivolous.'"

The Court therefore accepts: (1) The case was filed under 8 U.S.C. § 1447(b); (2) The Department of Justice (DOJ) requested a transfer to the Middle District of Florida; and (3) Judge Reyes granted that transfer. Each of these facts is central to the Plaintiff's claim—and each is now judicially acknowledged by the Court.

## II. THE TRANSFER VIOLATES THE STATUTE—JURISDICTION WAS ABSENT

Section 1447(b) of Title 8 provides that: "If there is a failure to make a determination [on a naturalization application], the applicant may apply to the United States district court for the district in which the applicant resides, which shall have jurisdiction over the matter."— 8 U.S.C. § 1447(b). This statute vests exclusive jurisdiction in the district where the case is filed. There is no statutory authority for the judge to transfer the case. Every federal circuit to consider this has recognized § 1447(b) as jurisdictionally fixed upon filing. See, e.g., Zayed v. United States, 368 F.3d 902 (6th Cir. 2004) ("The district court gains exclusive jurisdiction once a § 1447(b) petition is filed."), the United States Court of Appeals for the Fourth Circuit held that a federal court is vested with exclusive jurisdiction when a naturalization applicant timely files a petition in federal court pursuant to 8 U.S.c. § 1447(b) (2000), Etape v. Chertoff, 497 F.3d 379 (4th Cir. 2007). Etape, 497 F.3d at 382 (citing United States v. Hovsepian, 359 F.3d 1144, 1159 (9th Cir. 2004) (en banc)).

## A54

Congress also recognized the district courts' long-standing power over naturalization applications. Therefore, the district courts retained their power to review applications under the Act. Courts have reasoned that the Legislature intended to ensure that district courts have the final say regarding naturalization applicants.

Thus, when Judge Reyes transferred the case—after it was properly filed in D.D.C.—she acted in the complete absence of jurisdiction, and by accepting the allegation in the complaint as true this court agree.

## III. UNDER MIRELES, IMMUNITY DOES NOT APPLY

The Supreme Court in Mireles v. Waco, 502 U.S. 9 (1991), clearly held: "A judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." — Mireles, 502 U.S. at 12. This is the very standard quoted by this Court—yet not applied.

By accepting that the transfer occurred and that it involved a § 1447(b) petition, the Court necessarily accepted that Judge Reyes acted outside of jurisdiction. Under *Mireles,* judicial immunity cannot apply in such circumstances. To quote the D.C. Circuit: "A judge is not protected by immunity when she acts 'in the clear absence of all jurisdiction.'" — Sindram v. Suda, 986 F.2d 1459 (D.C. Cir. 1993).

*A55*

## IV. THE COURT'S "FRIVOLOUS" LABEL IS LEGALLY UNSUSTAINABLE

The Court dismissed the case as "patently frivolous" after accepting the facts as true. A legal claim grounded in: (1) A jurisdictionally exclusive statute, (2) A factual transfer acknowledged by the Court, And (3) a Supreme Court case on judicial immunity,...cannot be labeled frivolous without contradicting the rule of law. The Court never explained why the legal theory was frivolous, doing so is to ignore § 1447(b)'s plain language entirely. Such a ruling lacks foundation and fairness. See: Neitzke v. Williams, 490 U.S. 319, 328 (1989) ("A complaint is frivolous where it lacks an arguable basis either in law or in fact."). Here, Plaintiff's Complaint has both.

## V. THE MEETING OF THE MINDS IS CLEAR FROM THE RECORD

The Complaint alleges—and the Court accepts—that: (1) DOJ requested an act without jurisdiction (transfer), and (2) Judge Reyes granted it. This constitutes concerted action—government lawyers and a federal judge coordinating around a statutorily prohibited act. That is precisely the kind of governmental collusion § 1985(3) was designed to address. See: Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (recognizing § 1985(3) conspiracies require "some racial, or perhaps otherwise class-based, invidiously discriminatory animus"). The allegations fall well within the legal bounds for pleading such a claim.

*A56*

# VI. THE "WITHOUT PREJUDICE" DISMISSAL IS A TACTICAL DEFEAT, NOT A REMEDY

Dismissing without prejudice while affirming the factual record is an implicit suggestion that Plaintiff refile a "better" version. But that undermines the point: (1) The Complaint is clear, (2) The law is clear, and (3) The Court has accepted the facts. There is no ambiguity to fix. Plaintiff will not dilute, revise, or repackage claims that are legally sound. The Complaint is not the problem. The Court's application of law is.

## CONCLUSION

The Court's own findings compel a legal contradiction. By accepting the factual allegations in the Complaint as true—including that the DOJ requested a transfer and Judge Reyes granted it in a case filed under 8 U.S.C. § 1447(b)—the Court necessarily acknowledges that a jurisdictionally barred transfer occurred. Section 1447(b) vests exclusive jurisdiction in the district where the petition is filed and does not permit transfer. Therefore, under the Supreme Court's precedent in Mireles v. Waco, judicial immunity does not apply when a judge acts in the complete absence of jurisdiction. The Court cannot accept the facts of the Complaint while disregarding the legal consequences those facts impose. To sustain the dismissal, the Court must either interpret § 1447(b) to allow transfers that it plainly forbids or disregard binding authority on judicial immunity. Either outcome creates a legal conflict and elevates procedure over statutory rights. Plaintiff respectfully moves this

### A57

Court to correct its legal error and address the Complaint on the merits.

**WHEREFORE**, Plaintiff respectfully requests that the Court:

1. Vacate the November 19, 2025 dismissal order;
2. Reinstate the Complaint for adjudication on the merits; or
3. Issue an express legal finding on whether § 1447(b) permits judicial transfer, for appellate review.

Date: **11/19/2025**          Respectfully submitted,
                              **RAYON PAYNE, PRO SE**

*A58*

## APPENDIX K

ENDORSED ORDER directing Plaintiff to SHOW CAUSE within fourteen days from the date of this Order as to why they did not comply with the Court's 17 Initial Order and the Local Rules by failing to file their Notice of Pendency of Related Actions and Disclosure Statement. Alternatively, Plaintiff may cure their failure by fully complying with the Initial Order within fourteen days, thereby discharging the order to show cause. Failure to comply with this Order may result in the dismissal of this action without further notice. Signed by Judge Carlos E. Mendoza on 10/16/2025. (MEH) (Entered: 10/16/2025)

## *A59*

## APPENDIX L

ENDORSED ORDER dismissing this case without prejudice for failure to comply with the Court's Order to Show Cause at (Doc. 19). The Clerk of Court is directed to close this case. Signed by Judge Carlos E. Mendoza on 11/12/2025. (MEH) (Entered: 11/12/2025